**UNITED STATES of America, Plaintiff–Appellee,**

v.

**David ALDACO, Defendant–Appellant.**

**No. 98–4079.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 9, 1999.

Decided Jan. 21, 2000.

Barry Rand Elden, Chief of Appeals, Eric Wilson (argued), Office of the United States Attorney, Chicago IL, for Plaintiff–Appellee.

Daniel G. Martin, Office of the Federal Defender Program, Chicago, IL, Marc D. Hauser (argued), Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Chicago, IL, for Defendant–Appellant.

Before COFFEY, KANNE and EVANS, Circuit Judges.

COFFEY, Circuit Judge.

On March 31, 1998, a federal grand jury in the Northern District of Illinois returned a one-count indictment against the defendant-appellant, David Aldaco, a con-victed felon,[1] charging him with possession of a shotgun in violation of 18 U.S.C. § 922(g)(1). At trial Aldaco offered no defense, and the jury found him guilty as charged in the indictment. Thereafter, the defendant-appellant filed a motion for judgment of acquittal and a motion for a new trial, both of which the court denied without opinion. The trial judge sentenced Aldaco to fifteen years imprisonment followed by three years of supervised release. We affirm.

## I. BACKGROUND

Police officers for the city of Chicago, Illinois, arrested David Aldaco on July 2, 1993, while responding to a complaint that shots had been fired from a city rooftop. Officer James Sanchez was the first Chicago police officer to respond that night and, while climbing through a hatch door in a hallway ceiling, Officer Sanchez observed Aldaco on the roof holding a long-barreled weapon.[2] Three other men were on the rooftop with Aldaco. As Officer Sanchez was climbing through the hatch, he witnessed Aldaco throwing his weapon through the skylight. After arresting the four individuals on the roof, the officers confiscated the 12–gauge Mossberg shotgun that Aldaco had thrown and abandoned in the stairwell below the skylight.

The four men atop the roof were arrested and placed in a squad car, at which time Aldaco told Officer Sanchez that "the shotgun was his and not to put it on any of the other guys." The defendant-appellant repeated this same admission to Officer Sanchez at the police station.

Following Aldaco's arrest, the Chicago police sent the confiscated shotgun and ammunition to its Evidence and Recovered Property Division. Approximately one month later, a federal agent from the Bureau of Alcohol, Tobacco, and Firearms ("ATF") requested that the police test-fire

---

1. At the time of his indictment, Aldaco had prior felony convictions for attempted robbery, attempted armed robbery, armed robbery, and murder.

2. Officer Sanchez testified that he was approximately 20 feet away from Aldaco when he observed Aldaco with the shotgun.

the weapon. The shotgun fired as designed.[3]

On September 15, 1993, Aldaco pled guilty in Illinois state court to charges of "unlawful use of a weapon" in violation of 720 ILCS § 5/24–1, arising from the rooftop incident. In the course of the state court guilty plea proceedings, the state prosecutor summarized the anticipated testimony of Officer Sanchez from his reports; specifically, he stated that the officer would testify that he observed Aldaco on the rooftop holding a long-barreled shotgun and that Aldaco had, on two separate occasions, admitted ownership of the weapon. During a colloquy with the Illinois state court judge prior to the court's acceptance of the guilty plea, Aldaco admitted that the facts that the prosecutor offered as a summary of Officer Sanchez' anticipated testimony accurately described the events on the night in question.

Some four years after Aldaco pled guilty to the state court charges, the Chicago police authorities destroyed the shotgun and ammunition impounded by the officers at the time of Aldaco's arrest. Approximately four months after the destruction of the shotgun, a federal grand jury indicted Aldaco for being a felon in possession of a firearm. Aldaco moved to dismiss the indictment, or in the alternative, to suppress the evidence from the test-firing conducted in 1993 because the shotgun had been destroyed. The trial judge denied Aldaco's motion and the case proceeded to trial.

At trial, the government introduced the test-firing evidence and used a replica of the original shotgun to assist in demonstrating to the jury what Officer Sanchez observed when he saw Aldaco holding the gun. Defense counsel objected to the use of the test-firing evidence and the replica. The government also read into the record the colloquy from the state court guilty plea proceedings including Aldaco's testimony in which he admitted that the facts recited from Officer Sanchez' anticipated testimony were true and accurate. During closing argument, the prosecutor made reference to Aldaco's subpoena power, including his ability to compel witnesses to testify, and, arguably, made indirect references to his burden of proof and his failure to testify on his own behalf.

The jury convicted Aldaco of being a felon in possession of a firearm. Aldaco appeals.

## II. ISSUES

On appeal, we consider: 1) whether the district court's denial of Aldaco's motion to dismiss the indictment was proper; 2) whether the court abused its discretion when it admitted the government's test-firing evidence and a replica of the destroyed shotgun; 3) whether the trial court incorrectly denied Aldaco's motion for a mistrial based on the government's statements in closing argument referencing Aldaco's subpoena power, his "bad" character, and what might be interpreted as an indirect reference to his failure to testify on his own behalf; and 4)whether the trial judge abused his discretion in instructing the jury regarding possession of a firearm.

## III. DISCUSSION

### A. Aldaco's Motion to Dismiss

■ We review a trial court's denial of a motion to dismiss an indictment *de novo*. *See United States v. Lee*, 72 F.3d 55, 57 (7th Cir.1995).

■ Initially, Aldaco argues that the district court incorrectly denied his motion to dismiss the indictment. He contends that he was denied due process when the shotgun and ammunition recovered from the rooftop were destroyed before the gun could be tested for recent firing or fingerprints. "When, as in this case, the failure of the prosecution to preserve evidence is at issue, due process requires that the defendant demonstrate: 1) bad faith on the part of the government; 2) that the

---

3. The shotgun was not tested for fingerprints.

exculpatory value of the evidence was apparent before the evidence was destroyed; and 3) that the evidence was of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *United States v. Watts*, 29 F.3d 287, 289–90 (7th Cir.1994) (citations omitted).

In *Watts*, the defendant argued that he was denied due process by the police department's destruction of a videotape of the robbery with which he was charged. The police who investigated the robbery destroyed the videotape evidence after concluding that it was useless because it was blurry. The defendant, Watts, claimed that the videotape was exculpatory because of the hairstyle of the man filmed on the tape[4] and that the government violated his constitutional rights by intentionally destroying the evidence.

The district court denied Watts' motion to dismiss the indictment on due process grounds and we affirmed, finding that the defendant had failed to establish a due process violation. We ruled that Watts failed to demonstrate that the actions of the government rose to the level of bad faith. We also found that there was no proof in the record implying, much less establishing, that the destruction of the videotape was done for any other reason than the fact that the videotape was useless due to its blurriness. Furthermore, the totality of the other evidence against Watts was overwhelming. Specifically, there were two eyewitnesses who identified Watts as the robber, additional witnesses who placed Watts near the crime scene during the relevant time period, a sawed-off shotgun like the one used in the robbery was found in the car Watts was in at the time of his arrest, and Watts admitted committing the robbery; thus the tape was not the only piece of evidence that implicated Watts in the robbery. The destruction of the blurred tape was therefore logical in light of the wealth of other evidence establishing Watts' guilt and there was no showing of bad faith on the part of the government. In this context, we held that the trial judge's denial of Watts' motion to dismiss the indictment on due process grounds was proper.

Like the defendant in *Watts*, Aldaco has also failed to demonstrate that the government acted in bad faith as is necessary to establish that his due process rights were violated. Aldaco claims that the destruction of the shotgun just four months before he was indicted and over four years after his state court conviction on the weapons charge provides sufficient grounds from which to infer that the government acted in bad faith. He contends that the fact that the ATF agent requested the test-firing of the gun one month after Aldaco's arrest demonstrates that the federal government contemplated a prosecution from early on in the process. He argues that the government's failure to take possession of the shotgun, much less even request its preservation, lends support to his contention that the government intentionally engaged in "an effort to keep important evidence from Mr. Aldaco."[5]

Aldaco's argument misses the point: the Chicago Police Department, not the federal government, confiscated, tested, retained possession of, recorded, and eventually destroyed the gun some four years after the commission of the crime. Nothing in the record lends credence to the defendant-appellant's assertion that the federal government acted in collusion with the Chicago Police Department to prevent Aldaco from gaining possession of the shotgun for use in his defense; in fact, the only documented contact between the government and the police department regarding Aldaco's case came just one month after his arrest and nearly four years before the gun was destroyed and Aldaco was federally indicted. We cannot reason-

---

4. The man shown in the video had his hair pulled back in a single ponytail. Watts claimed that he always wore his hair in two pigtails—that is, one ponytail on each side of his head.

5. There is no evidence in the record indicating that Aldaco ever requested that the gun be tested for fingerprints or independently test-fired.

ably expect the Chicago Police Department to continue to store evidence of this nature indefinitely after a defendant had entered a guilty plea in state court and had been found guilty of a similar state crime involving the same events unless it had a sufficient basis to believe that the federal government was going to indict him. In this case, the City of Chicago had no reason to suspect that the federal government was going to indict Aldaco.

Aldaco speculates and states that the Chicago Police Department's "conscious destruction" of the shotgun is sufficient to make a showing of bad faith on its part for which the federal government should be held responsible because it took full advantage of the missing firearm. Even though the defendant has not cited, nor have we been able to discern from our research, any cases from this circuit in which any state or local government body destroyed evidence prior to a defendant's indictment by a federal grand jury, other circuits, when faced with a similar situation, have refused to impute bad faith to the federal government based on the state's actions absent any evidence establishing that any governmental agency was maliciously involved in the destruction of evidence. *See, e.g., United States v. Gallant,* 25 F.3d 36, 38–39 (1st Cir.1994) (rejecting defendant's argument that his due process rights were violated where state police officer destroyed roots and stems of marijuana plants seized from defendant's trailer prior to federal indictment on drug charges); *United States v. Baca,* 687 F.2d 1356, 1359–60 (10th Cir.1982) (defendant could not establish bad faith necessary for due process violation by the federal government where state authorities destroyed evidence prior to indictment and defendant made "no showing of culpability on the part of the federal government for the loss of the evidence").

Just as the overwhelming evidence of guilt in *Watts* diminished the need for the police to retain the blurry videotape, there likewise was far more evidence of Aldaco's guilt than what may have been established by the shotgun. The government was never asked nor did it have any need to offer fingerprint evidence to establish Aldaco's possession of the firearm; rather, it offered the testimony of a Chicago police officer to establish the defendant's possession of the shotgun. In addition to Officer Sanchez' testimony and Aldaco's admission to him at the time of his arrest, Aldaco had also previously pled guilty to the same set of facts in state court proceedings. We are aware of no reason to continue to retain and store evidence after the defendant has admitted to its possession under oath in open court. One can hardly blame the Chicago Police Department for concluding that the shotgun was no longer needed in light of these circumstances, especially because Aldaco had not yet been indicted in federal court after four years. Obviously the police department's capacity for the storage of items of evidence is not boundless, and certainly a four-year period of waiting prior to the destruction of evidence cannot be considered an unreasonable span of time given the factual situation in this case.

Because Aldaco has failed to make a showing, as required by *Watts,* that the government acted in bad faith when it destroyed the shotgun, we hold that the district court's denial of his motion to dismiss was proper.[6]

---

**6.** Even assuming, *arguendo,* that Aldaco could demonstrate bad faith on the part of the government, he still failed to demonstrate that his due process rights were denied because he failed to offer any testimony to establish the third prong of the *Watts* test—that the evidence that might have been procured from the shotgun could not have been elicited from a different source. Specifically, Aldaco claims that evidence obtained from the shotgun alone might have proven him innocent of the charges and contradicted Officer Sanchez' testimony, had it been tested for fingerprints or firing. Officer Sanchez testified that at the time of arrest and also at a later time while in police custody, Aldaco stated that "the gun was his" and asked that "it not be pinned on any of the other guys." Aldaco now denies having made that statement on either of the two separate occasions and claims that only the shotgun can prove his innocence. Aldaco

### B. Test-firing Evidence and the Shotgun Replica

Aldaco next argues that the trial judge erred in allowing the government to present evidence of the 1993 test-firing of the firearm as well as a replica of the destroyed shotgun. Aldaco contends that he was severely prejudiced by the admission of this evidence at trial.

■■■] We review a district court's decision to admit evidence for an abuse of discretion, affording "great deference to the trial court's determination of the admissibility of evidence because of the trial judge's first-hand exposure to the witnesses and the evidence as a whole, and because of the judge's familiarity with the case and ability to gauge the impact of the evidence in the context of the entire proceeding." *United States v. Van Dreel,* 155 F.3d 902, 905 (7th Cir.1998). *Compare United States v. Mancillas,* 183 F.3d 682, 701 n. 22 (7th Cir.1999) ("We do not second-guess the [trial] judge's credibility determinations because he or she has had the best opportunity to observe the verbal and nonverbal behavior of the witnesses focusing on the subject's reactions and responses to the interrogatories, their facial expressions, attitudes, tone of voice, eye contact, posture and body movements, as well as confused or nervous speech patterns in contrast with merely looking at the cold pages of an appellate record." (citation omitted) (brackets in original)), *petition for cert. filed,* No. 99–6626 (Oct. 18, 1999). "Accordingly, we will find re-versible error only if the district court's decision is not within the range of options from which one would expect a reasonable trial judge to select." *Van Dreel,* 155 F.3d at 905.

Under the Federal Rules of Evidence, relevant evidence, which is defined as evidence which tends to make the existence or non-existence of a material fact more likely than not, is admissible. *See* Fed. R.Evid. 402. In order to properly exclude otherwise relevant evidence, a trial court must be satisfied that the prejudice to the defendant substantially outweighs the probative value of the evidence. *See* Fed. R. Evid. 403.

### 1. The test-firing evidence

■■] Aldaco also argues that the test-firing evidence should have been deemed inadmissible because it was unduly prejudicial to him. Alternatively, the defendant-appellant argues that the evidence should have been excluded as a sanction for the destruction of the shotgun.[7]

The court concluded that the results of the test-firing conducted by the police which demonstrated that the shotgun fired as designed were relevant and admissible evidence and furthermore that it was not unduly prejudicial to Aldaco. However, in an attempt to protect Aldaco's rights, the trial judge stressed to the parties that defense counsel would be given latitude to fully explore the gun firing and testing issue on cross-examination, advising that

overlooks the fact that there were three other individuals on the roof with him the night he was arrested who could have testified that Aldaco was not in possession of the 12–gauge Mossberg if that indeed had been the case. Therefore, because the evidence that may have been obtained from the shotgun was not of such a nature that Aldaco would be unable to obtain convincing evidence by any other means, he has failed to meet the third prong of the *Watts* test and his due process claims again fall short.

**7.** Aldaco asks this Court to adopt the standard set forth by the Ninth Circuit for excluding destroyed evidence instead of applying the standard set forth in *United States v. Watts,* 29 F.3d 287, 289–90 (7th Cir.1994). In the Ninth Circuit, "[f]actors to be considered when determining if exclusion is an appropriate sanction for destroying or failing to preserve evidence are 'the quality of the Government's conduct and the degree of prejudice to the accused.' " *United States v. Belden,* 957 F.2d 671, 674 (9th Cir.1992) (citation omitted). Aldaco offers no reason why this Court should adopt the *Belden* rule aside from his observation that "it merely supplements the bad faith rule with a lower standard for exclusion of evidence." Aldaco having offered, and this Court finding, no compelling reason to discard the *Watts* standard in favor of the less stringent *Belden* standard, we decline to do so.

"this may be fully explored by the defendant in cross-examining the witnesses who are called regarding the gun, the shotgun, and its testing and also any other circumstances surrounding the acquisition of the weapon, the testing of it, and ultimately that it was destroyed."

We refuse to hold that the trial judge abused his discretion in denying Aldaco's motion to suppress the evidence regarding the test-firing of the long-barreled shotgun. The indictment charged Aldaco, a convicted felon, with possession of a firearm in violation of 18 U.S.C. § 921(a)(3). The statute defines a firearm as "any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive . . . ." *Id.* Obviously, the government was required to introduce the test-firing results in order to satisfy their burden of establishing that the shotgun was a "firearm." Proof that the shotgun properly fired during the test-firing conducted by Chicago police demonstrates that the weapon is a firearm as charged in the indictment. The test results were relevant. Given the fact that Aldaco pled guilty in Illinois state court to charges of "unlawful use of a weapon" in violation of 720 ILCS § 5/24–1, offered no defense in his federal trial, and twice made the admission to Officer Sanchez that "the gun was his and not to put it on any of the other guys," and because Aldaco also had more than ample opportunity to challenge the testing evidence at trial, we hold that the court did not erroneously conclude that the relevance of the gun-testing issue outweighs any potential prejudice to Aldaco. The trial court's conclusion that the test-firing evidence was admissible was proper.

## 2. The replica shotgun

■ Applying the abuse of discretion standard as is proper when reviewing a trial court's determination dealing with the admissibility of demonstrative evidence, *see United States v. Salerno*, 108 F.3d 730, 742 (7th Cir.1997), we are convinced that the court did not err in allowing the government to use a replica of the destroyed shotgun as demonstrative evidence. We agree with the trial judge's determination that the probative value of the replica shotgun outweighed the prejudice to Aldaco.

The government introduced the replica to illustrate what Officer Sanchez saw when he observed Aldaco holding the shotgun in order that the jury might properly determine whether the events happened as Officer Sanchez testified. This Court has frequently approved the use of this type of demonstrative evidence to establish that objects of this nature were actually used in the commission of a crime. *See, e.g., United States v. Towns*, 913 F.2d 434, 446 (7th Cir.1990) (district court did not abuse its discretion in allowing admission of a gun and ski mask identified by eyewitnesses "as being similar to those possessed by the robbers" for "the limited demonstrative purpose of providing examples of the gun and ski mask" used in the robbery); *United States v. Salerno*, 108 F.3d at 742–43 (no abuse of discretion when the district judge allowed the use of a scale model of a crime scene as demonstrative evidence); *Roland v. Langlois*, 945 F.2d 956, 963 (7th Cir.1991) (trial court did not abuse its discretion in allowing into evidence a life-sized model of an amusement park ride for demonstrative purposes). Courts in our sister circuits have also frequently approved of the admission of replica evidence, more specifically guns, for demonstrative purposes. *See United States v. McIntosh*, 23 F.3d 1454, 1456 (8th Cir. 1994); *United States v. Russell*, 971 F.2d 1098, 1105 (4th Cir.1992); *United States v. Ferreira*, 821 F.2d 1, 6 (1st Cir.1987); *Banning v. United States*, 130 F.2d 330, 335–36 (6th Cir.1942).

The only potential prejudice Aldaco has attempted to identify that might have resulted from allowing the replica shotgun into evidence is jury confusion over whether the gun displayed in court was actually the shotgun in the defendant's hand on the night of the arrest. To reduce the risk that the replica might in some unknown

way prejudice Aldaco, the judge cautioned the government to make clear to the jury that the shotgun it displayed at trial was not the actual shotgun possessed by Aldaco. The government made this clear both in its opening statement ("the thing to remember as we go through the trial is that [the Mossberg shotgun presented at trial] will not be the same. It will not be the same firearm"), and during its direct examination of Officer Sanchez by asking him to describe how the firearm at trial differs from that found on July 2, 1993. Finally, the judge assisted in minimizing prejudice by prohibiting the government from keeping the replica shotgun in the court room in plain view of the jury during the trial.

Because the use of replica evidence for demonstrative purposes is a widely-accepted practice, and because the court took steps to minimize potential prejudice to Aldaco, we refuse to hold that the court abused its discretion in allowing the use of a replica shotgun in this case.

### C. Aldaco's Motion for a Mistrial

Aldaco claims that the prosecutor made repeated impermissible references to his failure to testify on his own behalf, to the defendant's subpoena power, and to the fact that Aldaco was one of the reasons that his neighborhood was bad. According to Aldaco, these comments impermissibly violated his Fifth Amendment rights and his right to a fair trial. As such, Aldaco asserts that the district court erred in denying his motion for a mistrial.

 This Court ordinarily reviews the court's decision not to grant a mistrial for an abuse of discretion. *See United States v. King*, 150 F.3d 644, 647 (7th Cir.1998). However, in this case the trial judge applied an erroneous legal standard in deciding whether to grant Aldaco's motion for a mistrial.[8] We thereby review the trial

court's decision to deny Aldaco's motion *de novo*. *See In re Sealed Case*, 146 F.3d 881, 883 (D.C.Cir.1998).

### 1. Indirect references to Aldaco's failure to testify

] Direct comment on a defendant's failure to testify is forbidden by the Fifth Amendment. *See Griffin v. California*, 380 U.S. 609, 613–14, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Additionally, indirect commentary on a defendant's failure to take the stand can also constitute a violation of the defendant's Fifth Amendment privilege not to testify. *See United States v. Cotnam*, 88 F.3d 487, 497 (7th Cir.1996). Further, "a prosecutor's comment that the government's evidence on an issue is 'uncontradicted,' 'undenied,' 'unrebutted,' 'undisputed,' etc., will be a violation of the defendant's Fifth Amendment rights" if: 1) the only person who could have contradicted, denied, rebutted, or disputed the evidence was the defendant; 2) the prosecutor manifestly intended to refer to a defendant's silence; or 3) a jury would "naturally and necessarily" take the remark for a comment on the defendant's silence. *Id.* (citations omitted).

 Aldaco argues that the prosecutor made statements during his closing argument that violated his Fifth Amendment right not to testify. Aldaco specifically objects to statements by the prosecutor like "they have not disputed this ...," and "[w]ell, if there was anyone who could corroborate their version of the events, ..." claiming that they are impermissible under *Cotnam* because Aldaco was the only one who could controvert or dispute Officer Sanchez' testimony and the other evidence presented against him.

In this case, the prosecution merely commented in closing arguments that Officer Sanchez had consistently stated that

---

8. The district court mistakenly applied the "manifest necessity" standard in denying Aldaco's motion for a mistrial. "Manifest necessity" is the burden that the prosecutor must satisfy to avoid the double jeopardy bar

when moving for a mistrial over the defendant's objection. *See Arizona v. Washington*, 434 U.S. 497, 505–06, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978).

Aldaco was the man on the roof with the gun and that "they have not disputed this;" "this" referring to the fact that Officer Sanchez had consistently identified Aldaco as the man on the roof holding the gun. The prosecution evidently felt the need to point out this consistency in Officer Sanchez' testimony because Aldaco's counsel focused on other areas in which Officer Sanchez' testimony was not entirely consistent. Indirect references to the "undisputed" evidence or the lack of corroboration by the defendant violate the Fifth Amendment only when the defendant is the sole source who could possibly rebut the statement. *See id.* Where, as in this case, the defendant's three accomplices were available to rebut the officer's allegation that Aldaco possessed the gun, the prosecutor's statement that the evidence was "undisputed" was not improper.

## 2. Other Prosecutorial Comments

■ In addition to the prosecutor's statements regarding the undisputed evidence and the defense's lack of corroboration, Aldaco argues that the prosecutor made other inappropriate remarks that had the collective result of denying him his right to a fair trial.[9] He objects to the government's reference to the defense's power to subpoena witnesses, claiming that it inappropriately shifted the burden of proof to the defense, and of the comment

that Aldaco was partially responsible for making his neighborhood "bad."

■ "[I]mproper prosecutorial comments that do not implicate specific constitutional rights of the accused, such as the right to counsel and the right to remain silent, are evaluated to determine whether they deprived the defendant of a fair trial." *Id.* at 497–98. If comments from a closing argument, taken in isolation, are deemed to be improper, we then consider the remarks in light of the entire record to determine if the defendant was deprived of a fair trial. *See id.* Relevant considerations are: 1) the nature and seriousness of the prosecutorial misconduct; 2) whether defense counsel's conduct invited the remarks; 3) whether the jury instructions were adequate; 4) whether the defense could counter the improper remarks through rebuttal; and 5) the weight of the evidence against the defendant. *See United States v. Pirovolos,* 844 F.2d 415, 425 (7th Cir.1988).

We hold that it was not improper for the prosecutor to make clear to the jury that the defendant, like the government, has the power to subpoena any witness or witnesses relevant to the case after Aldaco's counsel had opened the door to this reply argument by the prosecution. In closing argument, Aldaco's counsel pointed out that the government had not called the other three individuals who were on the

---

9. In addition to the prosecutor's statements previously addressed, Aldaco objects to the following arguments by the prosecution:

Now, let me say this too, ladies and gentlemen, because counsel raised this point about who the government brought in or— and that we only brought in police officers and we only brought in these police officers, that there were other people in the building.

The defense has subpoena power just like the government. They don't have any burden of proof.

\* \* \* \* \* \*

Well, if there was anyone who could corroborate their version of these events.

\* \* \* \* \* \*

In his opening statement Mr. Martin told you that the blocks around 1900 South Racine was a bad neighborhood. And I submit to you, ladies and gentlemen, that after you look at all of the evidence that a logical inference to be drawn from that is that one of the reasons that that was a bad neighborhood is sitting right there.

rooftop that evening as witnesses at the trial nor the citizen who had called the police with the original complaint. In rebuttal, the government noted that both parties in a trial may compel witnesses to testify, and, at the same time, made very clear to the jury that, of course, Aldaco did not bear the burden of proof. This Court has previously considered such remarks proper under similar circumstances. *See United States v. King,* 150 F.3d 644, 648–49 (7th Cir.1998) (remark that defendant "had the opportunity to call witnesses" not improper in light of defense counsel's argument that the government should have called additional witnesses); *United States v. Sblendorio,* 830 F.2d 1382, 1391–94 (7th Cir.1987) (where defense opened the door by pointing out that certain witnesses had failed to testify, prosecution justified in pointing out that defense also has subpoena power while at the same time informing the jury that defense did not have to prove anything).

Finally, the trial court's determination that there were insufficient grounds to declare a mistrial from the prosecutor's statement in his argument to the jury that Aldaco was "one of the reasons" that the area in which he was arrested was a bad neighborhood was not improper. Defense counsel admitted in his opening statement to the jury that the area in which Aldaco was arrested was "one of the rougher stretches of the city," and the prosecutor was merely echoing and agreeing with this assertion in his closing argument. Moreover, the prosecutor's remarks in reply to defense counsel find support in the record. On the night Aldaco was arrested, police officers responded to a complaint that shots had been fired from the roof of a building in that neighborhood. When they arrived, Officer Sanchez saw Aldaco on the roof of the building brandishing a shotgun in the company of three other individuals. Aldaco's activity on the roof clearly contributed to the neighborhood's reputation as being a "rough stretch" of the city. *See United States v. Cook,* 432 F.2d 1093, 1096 (7th Cir.1970) (prosecutor may speak harshly about the action and conduct of the accused if the evidence in the record supports his comments).

After review of the record, we refuse to hold that the prosecutor's statements regarding Officer Sanchez' uncontroverted testimony, the defense's subpoena power, and Aldaco's contribution to his "bad neighborhood" rose to the level sufficient to warrant the granting of a mistrial. There was no Fifth Amendment violation when the prosecution referenced the "undisputed" evidence because there were witnesses besides Aldaco who could have contested the evidence that Aldaco possessed the gun on the roof. Additionally, there was nothing improper in the remarks that the defense has subpoena power or that Aldaco made the neighborhood "bad." Therefore, Aldaco was not deprived of his right to a fair trial.

### D. Jury Instructions Regarding Possession

 The trial court instructed the jury on both sole and joint possession of a firearm. The instructions, given over defense counsel's objections, were as follows:

> A person who has direct physical control over a thing, at a given time, is then in actual possession of it. The law recognizes also that possession may be sole or joint. If one person alone has actual possession of a thing, possession is sole. If two or more persons share actual possession of a thing, possession is joint. You may find that the element of possession, as just defined, is present if you find that the defendant had actual possession, either alone or jointly with others.

Aldaco argues that the district judge erred in giving this instruction because it was not germane to the facts of this case.

 We review the trial judge's rulings on jury instructions for an abuse of discretion. *See United States v. Neville,* 82 F.3d 750, 759 (7th Cir.1996). If the jury instructions fairly and accurately summarize the law and have support in the record they will not be disturbed on appeal. *See United States v. Wimberly,* 79

F.3d 673, 676 (7th Cir.1996). Finally, even if the instruction was erroneous, Aldaco must show actual prejudice to warrant reversal. *See United States v. Smith,* 131 F.3d 685, 688 (7th Cir.1997).

We hold that the district court did not abuse its discretion in giving the instruction on sole and joint possession because the instruction referred to provides a fair and accurate summary of the law as applied to the facts in the case; the fact that there were four men on the rooftop on the night in question supports the need for the instruction on joint possession. *See United States v. Mahone,* 537 F.2d 922, 929 (7th Cir.1976) (instruction on joint possession of gun proper where defendant in car with three other individuals even though defendant argued that there was no evidence of joint possession presented at trial).

### IV. CONCLUSION

We hold that the district court's denial of Aldaco's motion to dismiss the indictment was proper because Aldaco failed to present sufficient evidence to establish that the government acted in bad faith in destroying the shotgun in question. We also conclude that the trial court did not abuse its discretion in admitting the government's test-firing evidence and the replica shotgun over defense counsel's objections that such evidence unduly prejudiced Aldaco. Further, we hold that the court's denial of Aldaco's motion for a mistrial was not improper despite the prosecutor's comments about the undisputed evidence, defendant's subpoena power, and the defendant's character. Finally, the trial judge did not abuse his discretion in instructing the jury on both sole and joint possession. The jury instruction was a fair and accurate statement of the law and was amply supported by the evidence presented at trial.

AFFIRMED.