In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3235

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

EBENEZER DIKEOCHA,

Defendant-Appellant.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern
Division.
No. 90 CR 654--James F. Holderman, Judge.


ARGUED APRIL 12, 2000--DECIDED JUNE 27, 2000


  Before CUDAHY, COFFEY and KANNE, Circuit
Judges.

  COFFEY, Circuit Judge.  In October of
1990, Ebenezer Dikeocha, the defendant-
appellant in this case, was charged in a
superseding indictment in the Northern
District of Illinois, along with three
other individuals, with conspiracy to
distribute and distribution of heroin.
See 21 U.S.C. sec.sec. 846 and 841(a)(1).
Dikeocha and his co-conspirators, Vincent
Nwafor, Gibson Nwafor, and Charles
Emenogha were convicted following
separate jury trials./1  Dikeocha's co-
conspirators were convicted in 1991, and
this court later affirmed each of their
convictions and sentences. See United
States v. Emenogha, 1 F.3d 473 (7th Cir.
1993). Dikeocha was not tried until March
of 1999 because he was a fugitive, but
after he was apprehended, and following a
jury trial, he was also convicted on all
three counts charged.

  At Dikeocha's sentencing, the district
court relied, in part, on the testimony
of Larry Palmer, an unindicted co-
conspirator, who testified on behalf of
the government at the 1991 trial of
Dikeocha's co-conspirators. The court

sentenced Dikeocha to 188 months' imprisonment, $2500 in restitution, a $2500 fine, a $150 special assessment, and five years' supervised release. Dikeocha appeals his conviction and his sentence. We affirm.

I.  BACKGROUND

   In August of 1989, Sergeant Regina Evans, an undercover officer of the Chicago Police Department, purchased heroin from co-conspirator Vincent Nwafor during a meeting arranged by Nwafor's girlfriend, Darlene Sumpter, who was acting as a confidential informant. Sergeant Evans again purchased heroin from Nwafor in September and December of 1989.

   On January 25, 1990, Nwafor told Sergeant Evans that he was leaving the country to obtain heroin, but that his associates would probably be able to procure drugs for her while he was out of the country if any became available. On March 23, 1990, Sergeant Evans purchased a total of 53.7 grams of heroin from the defendant, Ebenezer Dikeocha, a/k/a "Ebeny," a/k/a "Ahijo," during a meeting in a parking lot in Chicago, Illinois. In a taped conversation with the undercover officer on that date, Ebeny stated that he and Nwafor "work together," and that "Vince is my cousin." A check of the charges on Ebeny's cell phone revealed that the telephone was billed to the home address of "Ebenezer Dikeocha."/2

   In late March of 1990, Sumpter, who was cooperating with the Drug Enforcement Administration (DEA) at the time, advised the DEA that she was planning a trip to Nigeria to visit her boyfriend, Vincent Nwafor. DEA officials advised Sumpter not to travel to Nigeria and further that her bags would be searched at the airport. She disregarded this advice and arrived at O'Hare International Airport on March 31, 1990, to effectuate her plan to travel to Nigeria. The U.S. Customs officials at O'Hare intercepted her and questioned her once she had completed checking four suitcases and two U-Haul boxes. Although Sumpter told the Customs officers that she had less than $1000 with her, a search of her checked luggage and boxes revealed $99,940 concealed in laundry detergent boxes. Forty of the bills matched the serial numbers of those

used in the March 23, 1990, undercover purchase from "Ebeny" and were found in a box with "Ebenezer" written on the side.

Other items in her baggage seized at O'Hare that day contained electronic equipment bearing the names "Ebenezer Dikeocha Ahijo" and "Ebenezer Dikeocha." Still other boxes containing cash and more equipment were labeled "Ebeny," "Vin," and "Vincent." Sumpter also was found to be carrying a letter addressed to co-conspirator Vincent Nwafor signed by "Ahijo" which stated "it will be better if we can pull all the resources together to make a big buy," and "with what (I) am enclosing . . . that will be enough to purchase 5 for both of us."

Sumpter was in the custody of U.S. Customs officials at O'Hare while her bags were being searched, and after the search was completed Customs agents turned her over to the DEA. Sumpter agreed to cooperate further with the DEA so as not to be charged. Subsequently, she made taped telephone calls to Ebeny wherein they had a discussion concerning the money she was carrying at the time of her apprehension at O'Hare.

On July 25, 1990, co-conspirator Charles Emenogha was arrested at O'Hare in possession of 997 grams of heroin. In a tape recorded conversation with Larry Palmer, who was cooperating with law enforcement, co-conspirator Gibson Nwafor stated that the heroin carried by Emenogha at the time of his arrest at O'Hare belonged to four or five people, including Dikeocha. Gibson Nwafor also stated during the recorded conversation that Dikeocha had met Emenogha in Brussels, but that Dikeocha had flown separately to New York while Emenogha flew into Chicago.

Co-conspirators Emenogha and Gibson Nwafor were arrested on drug charges on September 9, 1990, and co-conspirator Vincent Nwafor was arrested on September 10, 1990. Although a warrant had been issued for Dikeocha's arrest, United States Marshals were unable to arrest him contemporaneously with his co-conspirators because he had departed for Nigeria earlier in September of 1990.

On December 7, 1995, an individual using the name "Mario Taylor" and the address

of Dikeocha's girlfriend, Diedre Brown, made application for and received a passport. The photograph accompanying the application was that of the defendant, Dikeocha. On March 20, 1997, Dikeocha attempted to enter the United States using the fraudulent passport bearing Mario Taylor's name with his (Dikeocha's) picture, but he was refused entry. After questioning by Immigration and Nationalization authorities, the defendant admitted that he was not Mario Taylor, and that his real name was Ebeny Dikeocha.

On October 16, 1997, Dikeocha was arrested, at Diedre Brown's apartment, on the drug charges referred to in the 1990 indictment. It was discovered at the time of Dikeocha's arrest that he had gained entry into the United States using a fraudulent passport bearing the name of "Lawrence Taylor."/3

Like his co-conspirators who had been found guilty years before, Dikeocha went to trial before a jury and was found guilty of two counts of distributing heroin and one count of conspiring to distribute heroin. On appeal, Dikeocha challenges his conviction before the jury and alleges that the jury was improperly allowed to consider a document from the INS files linking him to Vincent Nwafor. He also challenges his sentence, arguing that the trial judge improperly relied at sentencing on the transcribed testimony of Larry Palmer in determining Dikeocha's relevant conduct.

II. ISSUES

On appeal, we consider: 1) whether the district court abused its discretion in admitting in evidence an INS record filled out by one of Dikeocha's co-conspirators when seeking entry into the United States; and 2) whether it was error for the trial court to rely on the testimony of a government witness (Larry Palmer), who had previously testified in the trial of the defendant's co-conspirators regarding Dikeocha's drug smuggling and selling activities, at sentencing because the testimony was unreliable.

III. DISCUSSION

A. Admission at Trial of Nwafor's INS

File

Dikeocha objects to the admission at trial of a document from Vincent Nwafor's INS file. The document contained a statement from Vincent Nwafor reciting that he had a brother named Geoffrey Nwafor; Dikeocha had told the INS that he had a cousin by the same name. Thus, Dikeocha argues that if the jury believed that Vincent Nwafor had a brother named Geoffrey Nwafor, and the defendant had a cousin named Geoffrey Nwafor, then Vincent and Dikeocha were in all probability cousins (unless there were two separate individuals with the same rather unusual name of "Geoffrey Nwafor," both with relatives who sought entry into the United States from Nigeria).

Dikeocha claims that the document from the INS file is inadmissible hearsay and also is unduly prejudicial because it served to establish his identity as Ebeny and his link to Vincent Nwafor for the jury. He argues that there was evidence offered at trial that one of the individuals who had sold drugs to Sergeant Evans was a cousin of Nwafor's and that the INS record tended to establish that he in fact was Vincent's cousin. In short, Dikeocha argues that the document from Vincent Nwafor's INS file was essential to establish that the "Ebeny" who had sold drugs to Sgt. Evans was, indeed, Ebenezer Dikeocha.

As we stated in United States v. Aldaco, 201 F.3d 979, 984 (7th Cir. 2000) (internal quotations and citations omitted):

We review a district court's decision to admit evidence for an abuse of discretion, affording great deference to the trial court's determination of the admissibility of evidence because of the trial judge's first-hand exposure to the witnesses and the evidence as a whole, and because of the judge's familiarity with the case and ability to gauge the impact of the evidence in the context of the entire proceeding.

However, even if the admission of the information from Nwafor's INS file was an abuse of discretion, this court would not reverse if the admission of the evidence was harmless error. See United States v. Hardin, 209 F.3d 652, 664 (7th Cir. 2000)

(citation omitted).

Evidentiary errors are deemed harmless, and thus not grounds "for reversing a jury's verdict," unless they had "'a substantial and injurious effect or influence on the jury's verdict.'" United States v. Jarrett, 133 F.3d 519, 529 (7th Cir. 1998) (citations omitted). We are of the opinion that the reception in evidence of Vincent Nwafor's INS file linking him to the defendant through the common relative Geoffrey Nwafor did not have a "substantial or injurious" effect on the jury's ultimate decision that the Ebenezer Dikeocha who was on trial was the same person as "Ebeny" who had sold drugs to the undercover Sergeant, Regina Evans. A review of the record clearly reveals that there was substantial other evidence demonstrating that the defendant was, in fact, "Ebeny."

First and foremost, Sergeant Regina Evans, who had previously participated in an undercover face-to-face heroin transaction with Ebeny, made an in-court identification of Ebenezer Dikeocha as the same man from whom she had bought heroin in a parking lot on March 23, 1990. Sergeant Evans testified that the drug transaction with Ebeny was extremely memorable because it was the largest drug buy of her career, some $10,000 worth of heroin. This in-court identification from the officer alone would provide sufficient grounds for a jury to conclude that the defendant, Ebenezer Dikeocha, was Ebeny, but the record reflects that there was a wealth of additional evidence in support of this conclusion: 1) Ebeny acknowledged in a tape-recorded conversation with Sergeant Evans in March of 1990 that he was Vincent Nwafor's cousin, and Ebenezer Dikeocha's INS application listed an individual with the same unusual surname, Nwafor, as being his cousin; 2) the drug dealer who sold Sergeant Evans heroin in 1990 used the name "Ebeny," and the government offered testimony from an INS agent that the defendant told the INS in 1997 that his name was "Ebeny Dikeocha;" 3) boxes seized during the search of Sumpter's baggage in 1990 at O'Hare airport were labeled "Ebenezer Dikeocha," "Ebeny", and "Ebenezer Dikeocha Ahijo;" and 4) the cell phone used in some of the drug transactions with Sergeant Evans in 1990 was registered to an individual residing

at Ebenezer Dikeocha's home address. Thus even without the information contained in Vincent Nwafor's INS file, the record reflects that there was more than sufficient evidence from which a reasonable jury could have concluded that the defendant Ebenezer Dikeocha was one-in-the-same as Ebeny, the heroin dealer. Therefore, even assuming that the trial judge's decision to admit Nwafor's INS document was improper, we hold that it was harmless error.

## B. Reliance on Palmer's Testimony in Determining Relevant Conduct

Dikeocha also argues on appeal that the judge improperly relied on the transcripts of statements made by Larry Palmer, an unindicted co-conspirator, who testified during the 1991 trial of Dikeocha's co-conspirators./4 Palmer's testimony from the previous trial included accounts of several drug smuggling expeditions involving himself, Vincent and Gibson Nwafor, Charles Emenogha, the defendant, Ebenezer Dikeocha, and others. Dikeocha claims that Palmer's testimony linking him to 3.5 kilograms of heroin, an amount which the trial judge found to be "conservative," was untrustworthy.

"[I]t is the sentencing judge alone who, based upon the evidence received, decides the identity and quantity of the drug distributed in an offense. . . . [I]n making these findings, he consider[s] the credibility, knowledge, and experience of the witnesses and determine[s] the reliability of a permissibly-broad range of evidence, including hearsay." United States v. Branch 195 F.3d 928, 934 (7th Cir. 1999). Thus, "[w]e review deferentially, looking only for clear er ror, a district court's calculation of drug quantities under the guidelines." United States v. Robinson, 164 F.3d 1068, 1070 (7th Cir.), cert. denied, 120 S. Ct. 628 (1999). Further, the information relied upon by the district court for purposes of determining relevant conduct at sentencing need not be proven beyond a reasonable doubt, but rather the testimony relied upon by the court must possess a "sufficient indicia of reliability to support its probable accuracy." Id. (citation omitted); see also United States v. Jackson, 207 F.3d 910, 920-21 (7th Cir. 2000).

We reject Dikeocha's assertion that the trial court improperly relied upon Larry Palmer's testimony. The court's ruling that Palmer's testimony at the previous trial possessed sufficient indicia of reliability was proper in that his testimony implicating Dikeocha was detailed, based upon personal knowledge, and subject to a thorough cross-examination by three attorneys acting on behalf of Dikeocha's co-conspirators, resulting in what amounts to almost 100 pages of trial transcript. The three different attorneys representing Dikeocha's co-conspirators vigorously cross-examined Palmer at trial, grilling him extensively on topics like his potential bias, his deal with the government, his own heroin dealing, his involvement in insurance fraud, and so on./5 Furthermore, Palmer's testimony regarding Dikeocha's participation in the conspiracy was consistent with, and supported by, other testimony presented at Dikeocha's trial. Finally, Dikeocha never saw fit to present any evidence to contradict Palmer's testimony that he was responsible for 3.5 kilograms of heroin. See United States v. Amerson, 185 F.3d 676, 689 (7th Cir. 1998) (A defendant's self-serving assertions may be discredited by the court when they find no support in "any facts, any exhibits, evidence, and/or logical reasoning.").

A trial judge's determination of the amount of drugs constituting the defendant's relevant conduct will not be set aside unless we were to find clear error in the court's findings upon review or it was established that it was based upon unreliable information. See Robinson, 164 F.3d at 1070. We hold that the trial court's determination of the drug quantity constituting Dikeocha's relevant conduct for sentencing purposes was not clearly erroneous because there is far more than a sufficient indicia of reliability to support the probable accuracy of the 1991 trial testimony of the absent witness, Palmer.

The defendant's conviction and sentence are

AFFIRMED.

/1 In United States v. Emenogha, 1 F.3d 473, 476 (7th

Cir. 1993), this court described the key players in the conspiracy as follows:

Vincent Nwafor, the prime mover in the enterprise, organized the purchases and the subsequent distributions. Gibson Nwafor, Vincent's brother, handled the financialarrangements. Gibson Nwafor held the profits at his own apartment, converted the proceeds to larger bills for easier handling at various Chicago banks, and wire-transferred money out of the country on Vincent Nwafor's behalf. Mr. Emenogha, who is the Nwafors' cousin, acted as a courier and brought heroin to Chicago from Nigeria on at least three occasions.

The operation was assisted by [the defendant in the instant case] Ebenezer Dikeocha, who smuggled heroin into the United States and distributed it at least once in conjunction with Vincent Nwafor. Additional distributors were Andy Uwazoke and Ike Agu. Larry Palmer, a/k/a Lawrence Ofuokwu (hereinafter "Palmer"), an uncharged member of the conspiracy, traveled to Nigeria to purchase heroin; he pled guilty to a drug charge in Maryland and agreed to cooperate with the United States in investigating other members of the conspiracy. Other couriers for the conspiracy were Tracy Ousley, Beverly (last name not known), and Darlene Sumpter, Vincent Nwafor's girlfriend, who contacted the Drug Enforcement Administration (DEA) in 1989 and agreed to cooperate in arranging an undercover purchase of heroin between Vincent Nwafor and Chicago police officer Regina Joanes.

/2 The cell phone was subscribed to by an "Andy Okoro" with a billing address at 1415 West Pratt, Chicago, Illinois. At the same time in 1990, Ameritech billed "Ebenezer Dikeocha" for home telephone service at the same address.

/3 The record does not reflect when Dikeocha was able to re-enter the United States.

/4 The judge relied on transcripts of Palmer's testimony when sentencing Dikeocha in 1999 because Palmer was unavailable to testify as he was out of the country in Nigeria at the time of Dikeocha's trial and sentencing.

/5 Dikeocha asserts that it was unfair for the district court to rely on Larry Palmer's testimony because his counsel did not have the opportunity to cross-examine him, as Palmer was in Nigeria and therefore unavailable to testify at Dikeocha's trial. However, the fact that Dikeocha did not have the opportunity to cross-examine Palmer is a problem of his own making for he had departed from the country at the time of

the scheduled trial. Had Dikeocha not been a fugitive until 1997, he more than likely would have been tried with his co-conspirators in 1991, and would have had the opportunity to personally cross-examine Palmer at that time.