NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with

Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 7, 2008
Decided July 7, 2008

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 07-3743

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| v. | No. 06-CR-918-1 |
| DONALD BAGGETT, *Defendant-Appellant*. | Charles R. Norgle, *Judge*. |

**O R D E R**

After a jury found him guilty of five counts of bank robbery, Donald Baggett was sentenced to a total of 121 months' imprisonment. *See* 18 U.S.C. § 2113(a). Baggett filed a notice of appeal, but his newly appointed appellate counsel now moves to withdraw under *Anders v. California*, 386 U.S. 738 (1967), because she is unable to discern a nonfrivolous basis for the appeal. We invited Baggett to comment on counsel's submission, *see* CIR. R. 51(b), but he has not responded. We therefore review only those potential issues identified

in counsel's facially adequate brief. *See United States v. Schuh*, 289 F.3d 968, 973-74 (7th Cir. 2002).

At trial a teller from each bank testified. Four of the tellers had previously identified Baggett as the robber from a photo array. One teller testified that Baggett had a gun tucked into the waistband of his pants. Each of the tellers testified that Baggett began the robbery by presenting a note stating that he had a gun and would kill the teller after work if he was not given cash. The government produced four of these notes recovered at the banks along with a similar "kill you after work" note that police found in Baggett's home. The government also presented "bait bills" from the robbed banks that police found in Baggett's pockets and in his bedroom at the time of his arrest, along with clothing from his home that resembled clothing worn by the robber. Moreover, a police officer testified that she had seen Baggett fleeing the scene of one of the robberies. Baggett did not testify.

During the fifth robbery the bandit was carrying a folder stamped with the logo of Resurrection Hospital, a Chicago healthcare facility, and a similar folder was seen but not taken when authorities searched Baggett's home. To drive home the point, the government introduced a demonstrative "Resurrection Hospital" folder—not the actual folder from Baggett's house, but one obtained from the facility. The exhibit matched the folders visible in a bank surveillance video and in a photograph taken inside Baggett's bedroom when it was searched. Baggett did not object to the admission of the folder, but he did argue (unsuccessfully) that the jury should be prohibited from closely examining it. Then a month after the verdicts, Baggett moved for a new trial, contending that the admission of the "Resurrection Hospital" folder was unfairly prejudicial and that the district court should have granted his motion for a judgment of acquittal. The district court denied the motion, ruling that the evidence was sufficient and noting that Baggett had never explained how the admission of the folder prejudiced him.

After that decision, Baggett, acting pro se, moved for substitute counsel because, he argued, his trial lawyer had been ineffective. Baggett complained that counsel had not told him how much evidence the government had compiled against him and claimed that he would have rejected his lawyer's advice to go to trial and instead would have pleaded guilty had he known the breadth of the government's case. Baggett also argued that the Federal Rules of Evidence required that his lawyer call an agent from the Federal Deposit Insurance Corporation (FDIC) to testify at trial, that his failure to do so denied him the right of confrontation, and that in the absence of that testimony counsel should have objected to the tellers' statements that their banks were federally insured instead of stipulating to that fact. And Baggett contended that trial counsel should have introduced evidence that the arresting officers told him that his arrest was triggered by outstanding Michigan warrants for "tickets" and violating probation. In response to Baggett's pro se

motion, counsel moved to withdraw. The district court allowed him to do so, though at the same time observed that counsel had been an effective advocate.

At sentencing Baggett's newly appointed lawyer objected to the government's proposed five-level upward adjustment for possessing a "firearm" during one of the robberies, *see* U.S.S.G. § 2B3.1(b)(2), arguing that a three-level increase for possessing a "dangerous weapon" would be more appropriate since Baggett had not been charged with a gun crime and there was no evidence that he was carrying a real gun and not a toy, *see id.* § 2B3.1(b)(2)(E). In response the government played a surveillance video from one of the robberies that, according to the government, showed Baggett holding a gun. The district court agreed that the video depicted what appeared to be the handle of a gun, but concluded that the government had not established that the gun was real. The court thus applied the three-level increase advocated by defense counsel, resulting in an adjusted total offense level of 30, which together with Baggett's criminal history category of III yielded a guidelines imprisonment range of 121 to 151 months. After considering the factors set forth in 18 U.S.C. § 3553, including the seriousness of the crimes and Baggett's remorse for his actions, the court imposed the low end of the range and ordered restitution in the amount of $30,633.

In her *Anders* submission, counsel first focuses on whether Baggett could challenge the sufficiency of the evidence supporting his convictions. We would reverse only if, considering the evidence "in the light most favorable to the prosecution," no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). But on this record there is more than sufficient evidence from which the jury could have rationally found that Baggett robbed all five banks. In this case the government had to prove that Baggett (1) by force or intimidation (2) took from the person or presence of another (3) money belonging to (4) a federally insured bank. *See* 18 U.S.C. § 2113(a); *United States v. Carter*, 410 F.3d 942, 952 (7th Cir. 2005). Baggett stipulated that the five banks were insured by the FDIC. And in addition to the tellers' testimony identifying Baggett as the robber in each instance and the police officer's testimony that she saw him driving away from the first heist, the government offered surveillance videos depicting Baggett, a threatening note found in his house that tracked those recovered from four of the five banks, and bait bills found in Baggett's pocket and bedroom. Any argument that this was not enough would be frivolous. *See Carter*, 410 F.3d at 952-53 (holding that evidence was sufficient where eyewitness, getaway car, note, DNA, and shoe prints tied defendant to robbery); *United States v. Galati*, 230 F.3d 254, 258 (7th Cir. 2000) (holding that evidence was sufficient where bank tellers identified defendant from photographs and government presented surveillance tapes, clothing, and palm prints linking defendant to robbery).

Counsel next considers whether Baggett could contest the admission of the "Resurrection Hospital" folder. Because Baggett did not object to the folder's admission at trial, our review would be for plain error. *See United States v. Wantuch*, 525 F.3d 505, 515 (7th Cir. 2008). The government introduced the folder to connect the photograph of Baggett's bedroom to the surveillance video of the fifth robbery and to illustrate how Baggett carried his demand notes into the banks. We have frequently approved the use of demonstrative evidence to establish that a similar object was used in the commission of a crime. *See, e.g., United States v. Burt*, 495 F.3d 733, 738-41 (7th Cir. 2007) (permitting admission of excerpted chat room transcripts intended to aid witnesses in interpreting unedited chat logs); *United States v. Aldaco*, 201 F.3d 979, 986-87 (7th Cir. 2000) (allowing admission of replica shotgun); *United States v. Salerno*, 108 F.3d 730, 742-45 (7th Cir. 1997) (permitting scale model of crime scene to be entered into evidence). Moreover, the district court instructed the jury that the folder was a replica rather than the actual folder photographed at the fifth bank and in Baggett's bedroom, and we have routinely held that such an instruction is sufficient to guard against any potential prejudice resulting from juror confusion. *See, e.g., Burt*, 495 F.3d at 741; *Aldaco*, 201 F.3d at 986-87; *United States v. Towns*, 913 F.2d 434, 446 (7th Cir. 1990). The "Resurrection Hospital" folder did not unfairly prejudice Baggett in any way, s*ee* FED. R. EVID. 403; *Aldaco*, 201 F.3d at 986-87, and counsel correctly concludes that any challenge to its admission into evidence would be frivolous.

Finally, counsel considers whether Baggett could argue that his trial counsel was ineffective. But we have repeatedly stated that any such claim is better left for a collateral proceeding. *See United States v. Harris*, 394 F.3d 543, 557 (7th Cir. 2005) (collecting cases). Counsel has been unable to identify any basis for bringing an ineffective-assistance claim on direct appeal, and so any claim Baggett might have is best saved for a collateral proceeding where that claim can be fully developed. *See United States v. Wilson*, 481 F.3d 475, 485 (7th Cir. 2007).

Accordingly, we GRANT counsel's motion to withdraw and DISMISS the appeal.