In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2515

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

VIRGIL E. JONES,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 CR 821--Elaine E. Bucklo, Judge.

Argued March 30, 2000--Decided August 11, 2000

Before Bauer, Diane P. Wood and Williams, Circuit Judges.

Bauer, Circuit Judge.  A federal jury convicted Virgil E. Jones, a former Chicago alderman, of conspiracy to commit extortion, attempted extortion, and filing false tax returns. He appeals his conviction, claiming that the government's exercise of its peremptory challenges in a racially discriminatory manner against four African-Americans violated Batson v. Kentucky, 476 U.S. 79 (1986), his Fifth Amendment Right to due process and his Fourteenth Amendment right to equal protection. He also seeks a new trial on the grounds that the District Court improperly limited his cross-examination of the government's star witness, that the court gave an erroneous definition of the term "willfully" in its instructions to the jury, and that the evidence was insufficient to convict him. Having reviewed the judgment of the District Court, its rulings, and the evidence, and finding no error, we affirm the District Court.

I.  BACKGROUND
     In April, 1991, Virgil Jones, an African-American, was elected Alderman of Chicago's 15th Ward. Eleven months later he was also elected Democratic Ward Committeeman for the 15th Ward. He won re-election to both of those offices four years later, but never finished either term. He

was indicted on December 11, 1997 as part of "Operation Silver Shovel."

A politician's duties include serving the needs of his constituents. Unfortunately, Jones' assistance came at a price. One person who quickly capitalized on this was John Christopher, the owner of several excavation and trucking companies. Prior to Jones' election, Christopher operated a dumpsite in the 15th Ward. His business ran smoothly and he was able to receive a large share of the work coming into the ward with the "help" of the then Alderman and Ward Superintendent. Within months after Jones' election, Christopher approached Jones, seeking his assistance in continuing to operating his 15th Ward dumpsite. Jones directed Christopher to deal with one of his "associates" and the two established a mutually beneficial arrangement: Christopher got to keep his dumpsite and work was directed to his businesses and the "associate" got regular cash payments. The deal later grew to include cash (paid to the "associate") in exchange for Jones' influence in obtaining a permit Christopher needed to operate a rock crusher at the site and Jones' assistance with violation notices Christopher received, among other things.

Jones came under suspicion and his days became numbered in the fall of 1992 when the FBI persuaded Christopher to cooperate with their investigation. Christopher began secretly tape-recording conversations with Jones and his associates and arranged two meetings observed by FBI agents at which he personally gave $4,000 and $3,000 in small unmarked bills to Jones. Jones, of course, never reported these payments on his income tax returns. After having been caught in the act, Jones was indicted on five counts of conspiracy to commit extortion, attempted extortion and filing false tax returns.

Jones was convicted on all counts and sentenced to 41 months imprisonment on the extortion counts and 12 months imprisonment on the filing of false income tax return charges, with the terms to run concurrently. He was also sentenced to a two year term of supervised release and fined $1,000. His post-trial motions, raising the same arguments he raises here, were all denied.

II. DISCUSSION

A. Batson Challenge

Jones complains about the government's exercise of its peremptory challenges to exclude four African-Americans from the jury. Although every defendant has "the right to be tried by a jury

whose members are selected pursuant to nondiscriminatory criteria," Batson v. Kentucky, 476 U.S. 79, 85-86 (1986), not every strike of a racial minority results in a violation of that right. The District Court, after a hearing, found that these jurors were stricken for race-neutral reasons and that no violation of Batson had occurred.

This court "will only overturn the trial court's determination that a prosecutor's use of peremptory challenges was not motivated by purposeful discrimination if that determination is clearly erroneous." United States v. Williams, 934 F.2d 847, 849 (7th Cir. 1991). See also United States v. James, 113 F.3d 721, 728 (7th Cir. 1997). This is because such determinations turn largely on "evaluation of credibility," Batson, 476 U.S. at 98 n.21, and the trial judge is in the best position to evaluate the demeanor of the attorney exercising the challenge. Hernandez v. New York, 500 U.S. 352, 365 (1991). We will not reverse the trial court's Batson findings unless we are left with "a definite and firm conviction that a mistake has been committed." Id. at 370.

Venire members Passion Wiley, Deborah Miller, Robert Holley and Barbara Johnson were excused by the government. After jury selection, counsel for Jones stated, "The Government excused a number of blacks, African-Americans, and we'd like to know whether there are any race neutral reasons for that exclusion."/1 Under the first step of the Batson analysis, the objecting party is required to establish a prima facie case that peremptory challenges were used to exclude a prospective juror on the basis of race. Mahaffey v. Page, 162 F.3d 481, 482-83 (7th Cir. 1998), cert. denied 119 S.Ct. 1786, 143 L.Ed.2d 814 (1999), citing Batson, 476 U.S. at 96-98. However, where, as here, the "government volunteers a race neutral explanation for exercising peremptory challenges and the trial court goes on to rule on the ultimate issue of whether the race neutral reason was really a pretext for discrimination, the issue of whether the challenging party has established a prima facie case is moot." United States v. Cooper, 19 F.3d 1154, 1160 (7th Cir. 1994). The second step of the Batson analysis requires the government to articulate a race-neutral reason for its challenge. Then, finally, the court must determine whether the objecting party has carried its burden of establishing that the proffered reasons are pretextual and that the government instead is engaging in purposeful discrimination. Id. at 1158. "[T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." Purkett v. Elem, 514 U.S. 765, 768 (1995) (per curiam), reh'g denied 515 U.S.

1170 (1995).

The government explained that it struck Ms. Wiley because she was unemployed, had three children, watched soap operas, and did not exhibit activity in the community outside of her home. Counsel's concerns about her lack of activity were confirmed, he said, when he observed her sleeping in the jury box as the court questioned other potential jurors at sidebar. Neither the court nor Jones' attorney saw Ms. Wiley sleeping and, therefore, Jones urges us to reject that rationale as a fabrication. We do not do so because we believe that inattentiveness is a legitimate reason for striking a potential juror. See United States v. Walton, 2000 WL 767891 (7th Cir. June 14, 2000). As counsel for the government in Walton so aptly argued, "[i]f anything is required of a juror aside from impartiality, it is the willingness and ability to pay attention and retain what is seen and heard during the trial." Id. at *4./2 The fact that neither the trial judge nor counsel for Jones could confirm that Ms. Wiley fell asleep during jury selection does not dissuade us from our holding, for the trial judge, who had the opportunity to evaluate counsel's demeanor and credibility, accepted the government's explanation regarding Ms. Wiley and we give that finding great deference. Hernandez, 500 U.S. at 365. "Once the trial judge has been persuaded of the neutrality of the prosecutor's reason for striking a juror, we have no basis for reversal on appeal unless the reason given is completely outlandish or there is other evidence which demonstrated its falsity." United States v. Griffin, 194 F.3d 808, 826 (7th Cir. 1999), cert. denied 120 S.Ct. 1546, 146 L.Ed.2d 358 (2000) (internal quotations and citations omitted). Neither of those conditions has been satisfied here.

Deborah Miller was excused by the government because "each time she stood up [to answer questions], she looked at the defendants and looked at the defense table, [but] did not do the same with the Government." The District Court accepted this as a "legitimate" reason. Jones counters that a juror's "look" is not a reasonable excuse for striking her. However, we have upheld peremptory strikes based upon a potential juror's body language, including the fact that a potential juror looked at one party but not the other. Dunham v. Frank's Nursery & Crafts, Inc., 967 F.2d 1121, 1125-26 (7th Cir. 1992). See also Griffin, 194 F.3d at 826 (juror refused to look around the courtroom when the court asked her to see if she recognized anyone there); United States v. James, 113 F.3d 721, 729 (7th Cir. 1997) (juror looked mad about being

there); United States v. Hinton, 94 F.3d 396, 397 (7th Cir. 1996) (juror had negative body language as the government introduced its case agent and read its witness list). Ms. Miller's body language in looking only at the defendant and not the government, could cause the government to believe that her sympathies might be directed toward the defendant. Such "intuitive assumptions" are often the basis for peremptory strikes and, as long as they are race-neutral, are permissible.

Jones challenges only briefly (two sentences in the summary of his argument) the dismissal of venire members Robert Holley and Barbara Johnson. His argument is necessarily perfunctory as both were excused for good reason. Robert Holley was excused because he indicated he was a close friend of a sitting African-American alderman in the City of Chicago. It takes little imagination to think of all the reasons why the government would want to excuse a potential juror who was a close friend of a person of the same profession as the defendant. That person, by virtue of his friendship, could have information about the profession that causes him to prejudge the defendant's guilt or innocence or could gain him undue influence over the other jurors during deliberations. See United States v. Evans, 192 F.3d 698, 701 (7th Cir. 1999) ("Understandably, [the government] would not want someone who might have specialized knowledge in this area second guessing the [g]overnment's witnesses during deliberations.") Thus, we, like the District Court, accept this as a perfectly legitimate race-neutral reason for excusing Mr. Holley.

The government exercised a peremptory challenge against Barbara Johnson because she "indicated that her son took the fall for somebody else." The government's reservations of Ms. Johnson seem well-founded in light of her statement that her son "took the fall" for a crime she believes he did not commit. In light of her previous experience with the criminal justice system, she could have preconceived notions, although not rising to the level of a challenge for cause, that make her an undesirable juror. Excusing her for her attitude toward the criminal justice system is a permissible strike. Id.

The District Court, which conducted and observed the voir dire and the Batson hearing, chose to credit the government's testimony regarding its peremptory challenges. Jones has not advanced any reasons which would lead us to conclude that the District Court erred. We affirm the ruling of the District Court that the government's exercise of its peremptory challenges to excuse these four African-Americans from the jury was proper.

B.  Limitations On Cross-Examination

Jones next argues that the District Court erred by granting the government's motion in limine precluding any reference or argument regarding John Christopher's dealings with Edward Vrdolyak. Jones sought to cross-examine Christopher about payments he made to Vrdolyak, a politically connected private attorney. Christopher was claimed to have been making payments to Vrdolyak for his help in securing a permit at the same time he was making payments to Jones and his associates. Jones said he wanted to present this evidence to challenge Christopher's credibility, and to demonstrate that Christopher's payments to Jones were legitimate because Christopher was already paying Vrdolyak for the same thing. The District Court granted the motion in limine, finding that the proffered evidence was irrelevant.

During Christopher's cross-examination, Jones was permitted to and did ask Christopher about Vrdolyak. Counsel asked whether Christopher hired Vrdolyak, whether he hired Vrdolyak because he knew "city work," whether he hired Vrdolyak to help him get "permits," and whether he hired Vrdolyak because he was "politically influential." Counsel also elicited testimony from Christopher that Vrdolyak was paid money for his services. Because Jones was able to cross-examine Christopher in this manner, we believe that he was able to delve into the very matter about which he claimed to have been precluded. His appeal on this issue is therefore moot.


C.  Jury Instruction

Jones attacks the District Court's instruction defining "willfully" under counts four and five, the counts charging him with filing false income tax returns. During the instruction conference, however, counsel for Jones agreed to the instruction that was ultimately given by the court. He has thus waived this argument and we do not consider it on appeal./3


D.  Sufficiency Of The Evidence

Finally, Jones asserts that the evidence was insufficient to convict him for filing false tax returns. His argument is presented in five sentences and is supported by no case law or other authority. The lack of development of this argument and absence of supporting case law "speaks to the paucity of the argument." United

States v. Watson, 189 F.3d 496, 500 (7th Cir. 1999). Arguments that are not adequately developed or supported are waived, id., ergo we do not consider it.

III.   CONCLUSION

For the foregoing reasons, the judgment of the District Court is affirmed.

AFFIRMED.

/1 In its brief, the government posits that this was not a properly formatted and complete Batson objection and its deficiencies obligate us to review the District Court's rulings merely for plain error. We decline to do so.

/2 See also United States v. Harris, 197 F.3d 870 (7th Cir. 1999), cert. denied 1205 S.Ct. 1546, 146 L.Ed.2d 358 (2000) (it is not a violation of the equal protection clause to strike a disabled person because of her physical disability where her medication is likely to cause drowsiness and render her incapable of paying attention during trial).

/3 In cases where a party fails to object to the instruction about which he later complains we review under a plain error standard. United States v. Olano, 507 U.S. 725, 732 (1993). Even if we were to review Jones' complaint regarding the instruction we would find no error under this standard as the instruction accurately stated the law.