In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3073

United States of America,

Plaintiff-Appellee,

v.

Antonio Alanis,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:00CR0008--Robert L. Miller, Jr., Judge.

Argued February 13, 2001--Decided September 7, 2001

Before Manion, Kanne, and Evans, Circuit Judges.

Kanne, Circuit Judge.  Antonio Alanis, defendant-appellant, was convicted of conspiracy to distribute cocaine, two counts of possession with intent to distribute cocaine, one count of possession with intent to distribute marijuana, and two counts of being a felon in possession. He was sentenced to a term of imprisonment of 468 months, to be followed by five years of supervised release. Alanis appeals his conviction, alleging that a myriad of errors werecommitted by the district court judge and the prosecuting attorney. Because we find that Alanis was not prejudiced by the errors that were made, we affirm his conviction.

I.  History

We review the district court's findings of fact for clear error. See United States v. O'Brien, 238 F.3d 822, 825 (7th Cir. 2001)./1 The numerous drug transactions with which Alanis was involved began, for the purposes of this appeal, in June 1998. Alanis offered Stephen Moore money to help him unload a shipment of marijuana. He also asked Moore to find a suitable location. Moore proposed the property of his friend, Raymond Selke, in Michigan City, Indiana,

and Alanis agreed to this location. Alanis, Moore, and Selke subsequently unloaded approximately 180 pounds ofmarijuana from the refrigerated semi-trailer that was delivered to Selke's residence. Alanis paid Selke and Moore $9000 for their work.

Marijuana apparently was not lucrative enough because the three men entered into an agreement to deal in cocaine. Alanis directed Selke to buy an International semi-tractor and provided him with the money to do so. At Alanis's behest, Selke had his driver, Raymond Henckel, drive the newly-purchased truck from Indiana to Texas in the spring of 1999. Selke, Moore, and Alanis flew to Texas on July 5, 1999; the reservation had been made that morning by a woman named Sarah (the name of Alanis's wife). A few days later, the truck was delivered to Alanis in Texas, and Selke and Moore drove it back to Indiana. Alanis returned home via commercial airline. Upon arrival in Indiana, Selke, Moore, and Alanis unloaded the 135 kilogram-sized packages of cocaine that had been hidden in a false fuel tank in the tractor. Alanis paid Selke and Moore $30,000 for their efforts.

The evidence at trial demonstrated that seven separate cocaine loads were transported from Texas to Indiana. In addition to the first load in July 1999, Selke and Moore drove three loads to Indiana (one load with 720 packages of cocaine in August 1999, one load with 540 packages in September, and one load with 540 packages in October), Henckel drove one load (with 540 packages in October), and Alanis arranged for two loads to be brought to Indiana by an independent driver (one with 405 packages at an unspecified date, the other with 422 packages in November). Moore and Selke helped Alanis unload the cocaine in each of these instances. Testimony at trial indicated that Alanis paid Selke and Moore $90,000 for their work on the August 1999 load alone. In all, the seven loads involved 3,302 one-kilogram packages of cocaine.

It was the November 1999 load that brought the conspiracy to an end. When the independent driver arrived on November 4, Alanis, Moore, and Selke met at Selke's home to unload the semi. They

moved the 422 packages of cocaine into a Chevy pickup truck that Alanis had brought to the premises. Unfortunately for the conspirators, agents had been performing surveillance at both Alanis's and Selke's residences. When Selke and Alanis left in the unloaded semi, they were stopped by police. Agents ordered the two occupants out of the truck and found a fake bill of lading indicating that the now empty semi had been carrying cargo from "Alro Steel" in South Bend. From that point forward, Selke agreed to cooperate with the authorities. He consented to a search of his property, and the agents seized the 422 packages of cocaine as well as the pickup truck. Laboratory analysis confirmed that the 422 kilograms of seized substances were cocaine.

After Selke agreed to cooperate, Moore also agreed to cooperate. Both testified at Alanis's trial, and a substantial amount of the evidence at trial was derived from their testimony. As the district court noted, "[t]heir testimony was well corroborated by travel records, telephone records, and the testimony of each other." United States v. Alanis, No. 3:00CR0008RM, slip op. at 2 (N.D. Ill. Aug. 4, 2000) (sentencing memorandum). Both of the semi-tractors used to transport the drugs to Indiana were examined by agents, and the compartments in which the cocaine had been hidden were photographed and measured. Airline records placed Alanis in Texas at times consistent with the witness testimony; reflected that someone named Sarah made flight reservations for Alanis, Moore, and Selke when they traveled in July and August; reflected that someone named Sarah made flight reservations for Moore and Selke when they traveled in September; and corroborated the times that Henckel had been in Texas. Telephone records corroborated the extensive phone contact between Alanis, Selke, and Moore--178 calls from January 9, 1999 to November 4, 1999--and also demonstrated that all telephone contact terminated on November 4, 1999, the date the agents made the seizure at Selke's residence.

Law enforcement agents arrested Alanis at his home on January 27, 2000, and searched his home pursuant to a warrant. They found a 9mm pistol in a bedside nightstand in the master bedroom. Next to

the pistol were a pair of eyeglasses similar in appearance to those worn by Alanis at trial, and men's clothing and Alanis's wallet were found nearby. Agents also found a .22 caliber Marlin rifle in a cabinet in the basement of Alanis's home. There was evidence that both weapons had crossed state lines before they arrived in Indiana.

The original indictment, which charged only two counts, was superceded by a seven-count indictment returned on March 9, 2000. Alanis pleaded not guilty and proceeded to trial. On April 3, 2000, a jury found Alanis guilty of conspiracy to distribute cocaine in violation of 21 U.S.C. sec. 846 (Count I), one count of possession with intent to distribute marijuana in violation of 21 U.S.C. sec. 841(a)(1) (Count II), two counts of possession with intent to distribute cocaine in violation of 21 U.S.C. sec. 841(a)(1) (Counts IV and V), and two counts of possessing a firearm after a felony conviction in violation of 18 U.S.C. sec. 922(g) (Counts VI and VII of the indictment). The judge sentenced Alanis to 468 months on each of counts I, IV, and V; a term of 240 months on count II; and a term of 120 months on each of counts VI, and VII; all to be served concurrently. After entry of Judgment on August 4, 2000, Alanis filed his notice of appeal.

II. Analysis

Alanis makes a number of claims on appeal. He asserts that his rights were violated in contravention of the Sixth Amendment, the Equal Protection Clause, the Due Process Clause, the Fifth Amendment, and the rule set forth by the Supreme Court in Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). He also challenges the sufficiency of the evidence relied on to convict him and requests a new trial. We will address each of these arguments in turn.

A. Sixth Amendment Claim

Alanis alleges that he was deprived of his Sixth Amendment right to a jury pool representing a fair cross-section of the community because the venire included only one black person and no Hispanics. Alanis presents a mixed question of law

and fact which we review de novo, United States v. Raszkiewicz, 169 F.3d 459, 462 (7th Cir. 1999), though the district court's factual determinations are reviewed for clear error, United States v. Smallwood, 188 F.3d 905, 914 (7th Cir. 1999), cert. denied, 528 U.S. 1129, 120 S. Ct. 964, 145 L. Ed. 2d 836 (2000). To establish a violation of the fair cross-section requirement, Alanis must show:

(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under representation is due to systematic exclusion of this group in the jury-selection process.

Johnson v. McCaughtry, 92 F.3d 585, 590 (7th Cir. 1996) (citing Duren v. Missouri, 439 U.S. 357, 364, 99 S. Ct. 664, 58 L. Ed. 2d 579 (1979)). The district court found that, even if Blacks and Hispanics could be combined as one group, Alanis failed to demonstrate the existence of the second and third elements.

We agree that Alanis did not satisfy the Duren standard. In the South Bend Division of the Northern District of Indiana, jury venires are drawn from eleven counties, yet Alanis only presented statistical evidence about the racial composition of St. Joseph County, the county in which the district court was located. Without evidence about the total representation of Blacks and Hispanics in the community from which the venire was drawn, there is no way to determine whether the representation in the venire was not fair and reasonable. Without proof that any "distinctive group" is under-represented, we cannot determine that such a group was excluded from the jury-selection process. We thus decline to find that Alanis was deprived of his Sixth Amendment right to a jury pool representing a fair cross-section of the community.

B.  Equal Protection Claims

1.  Allegation of Purposeful Racial Discrimination

Alanis alleges that the government violated his right to equal protection of the law when it used a peremptory challenge to strike the only black member of the jury venire. At the time of the strike, defense counsel objected based upon Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). Under Batson, a court must follow a three stage analysis to determine whether a peremptory strike was discriminatory: (1) the defendant must make a prima facie showing of discrimination, (2) the prosecution must then present a race-neutral explanation for striking the juror, and (3) "the trial court must decide whether the prosecution's reasons are pretextual and whether the defendant has proven purposeful discrimination." United States v. Jordan, 223 F.3d 676, 686 (7th Cir. 2000).

Here, when the district court asked the prosecution to explain his reasons for the strike, the prosecutor explained as follows:

I'm striking Mr. Cutler because of his lack of education [and] the fact that he's unemployed. In particular, . . . he said that he was trying to get a high school diploma. His form indicated that he only had 3 years of education, and I think he was talking about grade school. If he has 3 years of high school, we don't know. Thereason is because lack of education.

Tr. of Trial Proceedings at I-143. The district court determined that these were legitimate, non-discriminatory reasons for striking a potential juror and overruled the Batson challenge. When reviewing a district court's determination that a peremptory challenge was not motivated by racial discrimination, we will uphold that determination unless it was clearly erroneous. United States v. Jones, 224 F.3d 621, 624 (7th Cir. 2000).

Peremptory strikes may be made for a variety of reasons, so long as they are not race based, United States v. Smallwood, 188 F.3d 905, 915 (7th Cir. 1999), and lack of education is an acknowledged, non-discriminatory reason for striking a juror, see United States v. Marin, 7 F.3d 679, 686-87 (7th Cir. 1993) ("The attainment of a certain

educational level has been accepted by numerous circuits as a raceneutral criterion for exercising a peremptory challenge under the Batson mandate, and, as far as we can determine, has been rejected by none."). Alanis has not presented the court with evidence that the prosecution's reasons were pretextual. See Jones, 224 F.3d at 624 (noting that the opponent of the strike bears the burden of proving racial discrimination) (citing Purkett v. Elem, 514 U.S. 765, 768, 115 S. Ct. 1769, 131 L. Ed. 2d 834 (1995)). We thus find that the district court's ruling, determining that the prosecution's reasons were non-discriminatory, was not clearly erroneous.

2. Allegation of Selective Prosecution

At time of trial, Alanis's co-conspirators--Moore and Selke--had not been prosecuted, and Alanis asserts that the reason he was prosecuted and they were not is that he is Hispanic. Alanis moved to dismiss based on selective prosecution and the district court denied the motion. We review a district court's decision to deny a motion to dismiss an indictment for an abuse of discretion. See United States v. McMutuary, 217 F.3d 477, 481 (7th Cir. 2000), cert. denied, ___ U.S. ___, 121 S. Ct. 502, 148 L. Ed. 2d 471 (2000).

Criminal defendants bringing selective prosecution claims must show "that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." United States v. Hayes, 236 F.3d 891, 895 (7th Cir. 2001) (quotation omitted). To establish discriminatory effect, the defendant must show "that similarly situated individuals of a different race were not prosecuted." Id.; see also Chavez v. Ill. State Police, 251 F.3d 612, 638 (7th Cir. 2001). Alanis intimates that no factor other than race distinguished him from those who were not being prosecuted. In the court below, the prosecutor first explained that Selke and Moore probably would be prosecuted at some future date. He then asserted that Alanis was not similarly situated to Selke or Moore for two main reasons: 1) the government believed that Alanis played a larger role in the conspiracy because he had initiated the drug trafficking and also directed the activities of Selke and

Moore, and 2) Selke and Moore were cooperating with the government (and eventually testified at Alanis's trial). The court agreed that the fact that Selke and Moore were cooperating with the government distinguished them from Alanis and thus denied the motion to dismiss. Tr. of Trial Proceedings at I-61 (citing Jarrett v. United States, 822 F.2d 1438, 1444 (7th Cir. 1987) (finding that the defendant was not similarly situated to his accomplices because they both agreed to cooperate with the government whereas he refused to do so)).

While a criminal defendant is certainly not required to cooperate with the government, it is axiomatic that an individual who decides not to cooperate with the government is not similarly situated to one who does cooperate. See Jarrett, 822 F.3d at 1444. The district court noted that, if the "bigger picture showed that in all similar cases the non-Mexican suspects were given an opportunity to cooperate to the exclusion of those of Mexican descent, obviously the issue might well be different." Tr. of Trial Proceedings at I-61, 62. Yet, as the district court noted, such was not the case here. Instead, one conspirator decided not to cooperate while the others did. We thus find that the district court did not abuse its discretion in denying the motion to dismiss on the basis of selective prosecution.


C.  Due Process Claims

1.  Brady Claim

Alanis asserts that the government violated its obligation under Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), by suppressing evidence material to the defense, namely, the government's immunity agreements with the testifying co-conspirators. Alanis alleges that the co-conspirators "had some sort of immunity" and that the disclosure of such information would have allowed the defense to impeach the motivation and credibility of the government witnesses. In response, the government asserts that there were no immunity agreements to disclose, and thus no Brady obligations were violated. Further, the government points out that the defense knew the co-conspirators were

not being prosecuted and that the defense used this information at trial to attack the credibility of these witnesses. The district court found that the disputed evidence was not material under Brady, a ruling that we review for abuse of discretion. See United States v. Cruz-Velasco, 224 F.3d 654, 662 (7th Cir. 2000).

At trial, a prosecution witness acknowledged that agents had initially planned not to charge Selke, and Alanis asserts that this information should have been disclosed to the defense at the outset. While both Selke and Moore were likely hopeful that they would not be prosecuted, neither of them were given immunity in exchange for their testimony at trial and the government had not agreed not to prosecute them. The only guarantee Selke and Moore had was a Rule 11 promise that the information each of them provided would not be used against them (though anything Selke said could be used against Moore and vice versa) and the defense was aware of the letters. The defense was also aware that the co-conspirators were not being prosecuted at the time of Alanis's trial and, as noted above, it used this information to question the witnesses' credibility. Alanis has failed to demonstrate that "the prosecution suppressed evidence . . . favorable to the defense . . . that . . . was . . . material to an issue at trial." United States v. Payne, 102 F.3d 289, 293 (7th Cir. 1996). We thus find that the district court did not abuse its discretion in rejecting Alanis's Brady claim.

2.  Prosecutorial Misconduct Claims

Alanis alleges that the prosecutor improperly vouched for the credibility of various witnesses and gave personal opinions of things not in evidence. The first claim is presented in four sentences with one pertinent citation. The other claim is slightly more thorough but lacks citation to anything of precedential value. Both claims are so weakly developed and devoid of merit that we decline to address them. See Jones, 224 F.3d at 626 ("Arguments that are not adequately developed or supported are waived, ergo we do not consider [them].") (citation omitted).

D.  Fifth Amendment Claim

   Alanis asserts that the prosecution improperly commented on his failure to testify, in violation of his Fifth Amendment right to remain silent. He presents a series of statements made in the prosecutor's closing argument which, he asserts, insinuated that his silence was probative of guilt. "[I]ndirect commentary on a defendant's failure to take the stand can . . . constitute a violation of the defendant's Fifth Amendment privilege not to testify." United States v. Aldaco, 201 F.3d 979, 987 (7th Cir. 2000). Moreover:

a prosecutor's comment that the government's evidence on an issue is uncontradicted, undenied, unrebutted, undisputed, etc., will be a violation of the defendant's Fifth Amendment rights if: 1) the only person who could have contradicted, denied, rebutted, or disputed the evidence was the defendant; 2) the prosecutor manifestly intended to refer to a defendant's silence; or 3) a jury would naturally and necessarily take the remark for a comment on the defendant's silence.

Id. (internal quotations omitted). The defendant did not object at trial to any of the comments he now criticizes, thus we review the prosecutor's comments for plain error. See United States v. Laurenzana, 113 F.3d 689, 695 (7th Cir. 1997) (citing United States v. Olano, 507 U.S. 725, 732, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993)).

   During closing argument, the prosecutor asked the jury, "Why would [Alanis and the co-conspirators] stop calling each other if there wasn't a conspiracy like this?" He asked if the defense had talked to the jury about the numerous trips to Texas and then stated that the defense case was "long on rhetoric, short on content." He also asked whether the jury had heard any explanation from the defense about the bill of lading that agents found in the semi-tractor on November 4, 1999, which indicated that cargo had been picked up at "Alro Steel" in South Bend.

   In sum, the prosecutor's comments were directed towards reinforcing that the

government's case was undisputed in material respects. The prosecution may "ask[ ] the jury to assess the value of the existing evidence in light of the countermeasures that were (or were not) taken." United States v. Sblendorio, 830 F.2d 1382, 1391 (7th Cir. 1987). While the prosecutor's comments would have been improper if Alanis was the only person who could have contradicted, denied, rebutted, or disputed the evidence, see Aldaco, 201 F.3d at 987, such was not the case here. The defense could have produced evidence to explain why the phone calls ceased without Alanis having to testify; for example, phone company records showing that his phone was disconnected or a friend's testimony that Alanis, Selke, and Moore had a falling-out. Similarly, with the trips to Texas the defense could have presented proof that Alanis was attending a conference for work or visiting relatives with his family. As for the bill of lading, a witness from the steel company named on the bill could have testified that the bill was genuine. Further, none of these comments were "manifestly intended to refer to a defendant's silence" and would not have been likely taken "for a comment on the defendant's silence." Id. Plain error review requires us to determine whether the prosecutor's remarks "deprived the defendant of a fair trial" and whether the failure to correct any error would result in "a miscarriage of justice." Laurenzana, 113 F.3d at 695. We do not believe that the prosecutor's comments were plainly erroneous and find that they did not improperly burden Alanis's Fifth Amendment privilege not to testify.

E.  Apprendi Claims

Alanis alleges that both the grand jury indictment and the instructions given to his petit jury were defective in light of the rule announced in Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and that his resulting sentence was without proper foundation. He did not present these challenges to the district court; therefore, we review the indictment to determine whether "it is so defective that it does not, by any reasonable construction, charge an offense for which the defendant is convicted," United States v. Irorere, 228 F.3d 816, 830 (7th

Cir. 2000) (internal quotation omitted), and we review the jury instructions for plain error, see United States v. Jones, 245 F.3d 645, 648 (7th Cir. 2001).

We have recently addressed the law applicable to Alanis's situation:

In Apprendi, the Supreme Court held that "any fact other than the fact of a prior conviction that increases the penalty for an offense beyond the statutory maximum penalty for that offense is an element of the crime and so must be submitted to the jury and proved beyond a reasonable doubt." United States v. Jackson, 236 F.3d 886, 887 (7th Cir. 2001) (citing Apprendi, 120 S. Ct. at 2362-63). In cases involving drugs and alleged violations of 21 U.S.C. sec.sec. 841 and 846, like the one now before us, we have held that "before a defendant can be sentenced to a term of imprisonment above the default statutory maximum provided in sec. 841(b)(1)(C) or (D), Apprendi requires that a drug type and amount sufficient to trigger the higher statutory maximums of sec. 841(b)(1)(A) or (B) be charged in the indictment and found by the jury." United States v. Mietus, 237 F.3d 866, 874 (7th Cir. 2001). When a drug amount is not charged in an indictment or included in instructions submitted to a jury, the statutory maximum under sec. 841(b) is to be determined without making any reference to drug amount. See United States v. Westmoreland, 240 F.3d 618, 632 (7th Cir. 2001).

Jones, 245 F.3d at 648. With this legal framework in mind, we review the various counts of which Alanis was convicted.


1.  The Conspiracy Count: Count I

Count I of the indictment charged Alanis with conspiring "to distribute and to possess with the intent to distribute . . . cocaine . . . in an amount in excess of five (5) kilograms" in violation of 21 U.S.C. sec.sec. 841(a)(1)/2 and 846./3 The drug amount was thus charged in the indictment as required by Apprendi. The jury instructions did not, however, make any reference to the amount of cocaine involved in the conspiracy. Rather, the instructions stated that the jury had to find "that the conspiracy as charged in

Count I" was proved beyond a reasonable doubt. Whether drug quantity is "submitted to a jury" when the jury instructions do not mention drug quantity but instead incorporate an indictment in which drug quantity was charged is an issue our court has yet to consider. Even if we might find this type of reference enough to satisfy Apprendi in certain instances, however, we are not confident that the jury even read the indictment, much less found beyond a reasonable doubt that Alanis possessed the drug quantity charged here. First of all, the indictment was not read to the jury; the jurors were simply given a copy along with the trial exhibits and jury instructions. Further, the jury instructions replicated the description of the charge, thus precluding any need to read the indictment in order to find out what had been charged in Count I:

Count I of the indictment charges Mr. Alanis with conspiracy to distribute, and possess with intent to distribute, a controlled substance. The indictment alleges that, in or around June 1999 and continuing to and including November 4, 1999, Mr. Alanis and others conspired to knowingly and intentionally distribute, and possess with intent to distribute, cocaine.

Neither was the quantity included on the jury verdict. It is possible, then, that the jury found Alanis guilty of conspiring to distribute and possess cocaine without ever determining the quantity involved in the conspiracy.

The judge sentenced Alanis to 468 months on Count I in accord with 21 U.S.C. sec. 841(b)(1)(A)--this is above the default statutory maximum of twenty years provided in 21 U.S.C. sec. 841(b)(1)(C) and is also above the thirty-year maximum for a defendant previously convicted of a felony drug offense. See 21 U.S.C. sec. 841;/4 see also Jones, 245 F.3d. at 650-51. Because Alanis was "sentenced to a term of imprisonment above the default statutory maximum" without a jury determination of the amount of drugs involved, he was sentenced in violation of the rule set forth in Apprendi. See Jones, 245 F.3d at 648 (internal quotation and citation omitted).

Our review is for plain error review. In

order to prevail, Alanis must show not only that there was plain error, but also that the error "affected [his] substantial rights" and "seriously affected the fairness, integrity, or public reputation of the judicial proceedings." United States v. Nance, 236 F.3d 820, 824 (7th Cir. 2000), petition for cert. filed, No. 00-9633 (Apr. 24, 2001). When there was "overwhelming" evidence that the defendant's offense involved an amount sufficient to trigger the higher statutory maximums, "he is not entitled to be re-sentenced on the basis of Apprendi." Jackson, 236 F.3d at 888 (quotation omitted). Here, there was overwhelming evidence that more than five kilograms were involved in the conspiracy. Even if the only load considered was the load seized by agents on November 4, 1999, that load contained 422 kilograms of cocaine. We have found that an Apprendi error does not seriously affect the fairness, integrity, or public reputation of the judicial proceedings where the record provides overwhelming support for the conclusion that more than five kilograms were involved, see Nance, 236 F.3d at 826, and this situation clearly falls into that category, see id. ("If it is clear beyond a reasonable doubt that a properly worded indictment and a properly instructed jury would have found [the defendant] guilty absent this error, then we cannot say that the error was so serious that it requires us to set aside the judgment."); see also Jackson, 236 F.3d at 888 ("No reasonable jury could have failed to convict Jackson of being involved in the sale of hundreds, if not thousands, of grams of crack. The failure to ask the jury to determine whether the amount was at least 5 grams was harmless far beyond a reasonable doubt."). We thus find that Alanis is not entitled to be re-sentenced on Count I.


2.  The Cocaine Counts: Counts IV and V

   Counts IV and V both charged that Alanis "possess[ed] with intent to distribute cocaine . . . in excess of five (5) kilograms," and the latter count noted that the amount was "approximately 422 kilograms."/5 Although both counts of the indictment charged a specific amount of drugs, the jury instructions did not do so. And as with Count I, Alanis's sentence was above the default statutory

maximum--468 months on each of Counts IV and V. We thus reach the same conclusion as we did with respect to Count I-- Apprendi was violated because the drug quantity charged in Counts IV and V was not submitted to the jury and proved beyond a reasonable doubt.

We again find, however, that this error does not require that Alanis be re-sentenced. Count V, which pertained to the November 4 seizure, clearly involved more than 5 kilograms. With respect to Count IV, the witnesses testified that there was at least 150 kilograms and as much as 300 kilograms of cocaine (the district court discounted this testimony and determined that Alanis was responsible for 135 kilograms). The defense never asserted that the witnesses were exaggerating the amounts and it made no attempt to show that Alanis possessed a quantity less than five kilograms. Instead, the defense strategy at trial was to argue that Alanis was innocent of all charges. The jury obviously disagreed. Based upon this record, there is no doubt that a properly instructed jury would have found Alanis guilty of possessing more than five kilograms of cocaine on both occasions charged in Counts IV and V. See Nance, 236 F.3d at 826.

3.  The Marijuana Count: Count II

With respect to the marijuana count, Count II, the indictment did not charge a specific amount of marijuana, it simply alleged that Alanis "possess[ed] with intent to distribute marijuana." This is clearly a violation of Apprendi. See Jones, 245 F.3d at 648. Yet, even if we remanded for re-sentencing, obtaining a reduced sentence on Count II would not reduce Alanis's time in prison. The judge sentenced Alanis to 468 months on each of Counts I, IV, and V and a term of 240 months on Count II, all to be served concurrently. Because the sentence for Count II runs concurrently to the sentence for Counts I, IV, and V--which we have already determined to be proper-- the error had no effect on Alanis's sentence and thus did not prejudice him. See Nance, 236 F.3d at 824.

Nor did the marijuana count have any effect on the court's determination of his offense level under the United States

Sentencing Guidelines./6 The court grouped all of Alanis's drug counts together for sentencing, used the drug equivalency table to convert the relevant amount of cocaine to marijuana (the table equates 1 gram of powder cocaine to 200 grams of marijuana), and then added the amount of marijuana charged in Count II,/7 yielding a grand total of 660,481.648 kilograms of marijuana. Under the relevant sentencing guideline, an offense that involves more than 30,000 kilograms of marijuana is assigned an offense level of 38. Thus, even if the 81.648 kilograms of marijuana were removed from the total drug amount, Alanis would not have fallen into a lower offense level. Alanis's substantial rights were clearly not affected by the district court's error.

F.  Insufficiency of the Evidence Claims

  Alanis's final assertion is that the evidence presented at trial was not sufficient to sustain the verdict beyond a reasonable doubt. He raised this challenge before the district court by orally moving for a new trial (which the judge construed as a Rule 33 motion for new trial, as provided in the Federal Rules of Criminal Procedure) but the judge denied the motion. See United States v. Alanis, No. 3:00CR0008RM, slip op. (N.D. Ill. April 6, 2000)./8 We limit our discussion of this issue to that which is challenged in Alanis's brief: his conviction on Counts VI and VII for being a felon in possession of firearms that traveled in interstate commerce, in violation of 18 U.S.C. sec. 922(g)./9 The jury found Alanis guilty of possession of a Smith and Wesson 9mm pistol and a Marlin .22 caliber rifle on or about January 27, 2000. He argues that the government did not prove that he was in possession or control of either weapon, pointing out that the pistol belonged to his wife and that the rifle was found inoperable in the basement, and had been left there by the previous owner of the house. Alanis does not challenge that he lived in the house where the guns were found but rather claims that he was unaware that the guns were present in the house, and thus he could not be guilty of knowing possession./10

  "When considering a motion for a new trial based on the sufficiency of the

evidence, we grant such a request only if the verdict is against the manifest weight of the evidence. . . . A district court's denial of a motion for a new trial will be reversed only upon a showing that the court abused its discretion." Tullis v. Townley Eng'g & Mfg. Co., 243 F.3d 1058, 1062 (7th Cir. 2001) (citations omitted). We consider the evidence in the light most favorable to the government, drawing all reasonable inferences in its favor. See Alverio v. Sam's Warehouse Club, Inc., 253 F.3d 933, 939 (7th Cir. 2001); see also United States v. Kosth, 257 F.3d 712, 718 (7th Cir. 2001).

Under 18 U.S.C. sec. 922(g)(1), the government had to "establish beyond a reasonable doubt that (1) [Alanis] had a previous felony conviction, (2) [he] possessed a firearm, and (3) the firearm had traveled in or affected interstate commerce." United States v. Walls, 225 F.3d 858, 864 (7th Cir. 2000). Alanis only challenges the second element, asserting that he did not possess a firearm within the meaning of the statute. It is well established that possession may be either actual or constructive. See United States v. Kitchen, 57 F.3d 516, 520 (7th Cir. 1995). The government does not contend that Alanis had actual possession, seemingly because there was no evidence that Alanis "ever had physical control over the gun." Walls, 225 F.3d at 866. In the absence of "direct physical contact . . . , a defendant may nevertheless have constructive possession if she knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." Id. (internal quotation and citations omitted). We have repeatedly held that "constructive possession may be established by a showing that the firearm was seized at the defendant's residence." Id. at 867 (citing Kitchen, 57 F.3d at 521); see also United States v. Hopson, 184 F.3d 634, 636 (7th Cir. 1999) (noting that the police found the guns among the defendant's things in the defendant's home), cert. denied, 528 U.S. 1093, 120 S. Ct. 828, 145 L. Ed. 2d 696 (2000); United States v. Taylor, 154 F.3d 675, 682 (7th Cir. 1998) (finding constructive possession where there was substantial evidence that the defendant lived at the

residence where the weapons were seized, that he was the only man at the residence, and that "[t]he weapons were found in a padlocked closet near [his] bed . . . [that contained] only men's clothing[,] cologne, [and] a receipt with his name on it"). When a gun is found in a defendant's bedroom, as here, it would not be improper for the jury to "infer that [the defendant] had both knowledge of the firearm and an intent to exercise dominion and control over it merely from its presence in the bedroom that [he] . . . shared with [his wife]." Walls, 225 F.3d at 867.

Alanis asserts that the pistol was his wife's and that it was found in her bedroom. However, it is not material that Alanis's wife might have owned the pistol because "[c]onstructive possession may be either sole or joint." Kitchen, 57 F.3d at 521. Thus, her ownership does not preclude Alanis's possession. Further, the government presented sufficient evidence to support a finding that the bedroom was shared by Alanis and his wife, and that the gun was found in a nightstand next to his bed, with his eyeglasses, clothing, and wallet nearby.

Alanis also asserts that, because the rifle was inoperable and found in the basement, the government failed to demonstrate possession. We have previously rejected the contention that the government must "prove that the gun was operable," United States v. Buggs, 904 F.2d 1070, 1075 (7th Cir. 1990), because it is sufficient to show that "the gun was designed to fire," id. (quotation and citation omitted). There is no disputing that the item seized was indeed a rifle that was designed to fire. In sum, we cannot find that the evidence was so insufficient as to justify overruling the district court's decision not to grant a new trial.

III.  Conclusion

For the foregoing reasons, we AFFIRM the conviction and sentence of Antonio Alanis.

FOOTNOTES

/1 Because the district court noted that "persons in the drug trade . . . often tend . . . to over-estimate the quantities they actually handled,"

the court "discount[ed] the eyewitnesses' recollection of drug quantities by ten percent." United States v. Alanis, No. 3:00CR0008RM, slip op. at 2-3 (N.D. Ill. Aug. 4, 2000) (sentencing memorandum). For the purposes of this opinion, we use the drug amounts as determined by the district court at sentencing rather than those asserted by the government.

/2 Section 841(a) states that "it shall be unlawful for any person knowingly or intentionally--1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. sec. 841(a).

/3 Section 846 states: "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. sec. 846.

/4 21 U.S.C. sec. 841 provides:

(b) . . . [A]ny person who violates subsection (a) of this section shall be sentenced as follows:

(1)(A) In the case of a violation of subsection (a) of this section involving-- . . .

(ii) 5 kilograms or more of a mixture or substance containing a detectable amount of-- . . .

(II) cocaine, its salts, optical and geometric isomers, and salts of isomers; . . .

such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life . . . .

(C) In the case of a controlled substance in schedule I or II [which includes cocaine], such person shall be sentenced to a term of imprisonment of not more than 20 years . . . . If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 30 years . . . .

/5 Count IV charged that, in or around July 1999, Alanis "possess[ed] with intent to distribute cocaine . . . in excess of five (5) kilograms." Count V charged that on November 4, 1999 he "possess[ed] with intent to distribute cocaine . . . in excess of five (5) kilograms (approximately 422 kilograms)."

/6 At sentencing, the judge calculated Alanis's offense level at 38 (due to his prior felony conviction); increased his offense level by two levels pursuant to section 3B1.1 of the United States Sentencing Guidelines, based on Alanis's role in organizing the offense; and determined that he fell into criminal history category III.

/7 The relevant quantity of marijuana was estimated based upon the witness testimony at trial. Moore and Selke had testified that the marijuana possessed by Alanis filled the bed of a pickup truck two-thirds of the way. Moore estimated that there were at least 90 packages in the truck bed and that each package weighed acouple of pounds (Selke thought there were over 100 packages). The judge thus determined that there were 90 packages of two pounds, resulting in 180 pounds of marijuana (an amount equal to 81.648 kilograms).

/8 Alanis's brief argues that he should have been granted a new trial, and states that his oral motion for a new trial was accepted as a Rule 33 motion. Indeed, the trial transcript reveals that, once counsel began to argue that the evidence was insufficient, the court asked whether counsel wanted "to file a motion under Rule 33 for a new trial." Tr. of Trial Proceedings at V-186. The judge's memorandum and order did not treat the motion as a Rule 33 motion, however; it referred to it as an oral motion for judgment of acquittal pursuant to Rule 29(c). See Alanis, slip op. at 1. Because neither Alanis nor the government mentioned this issue on appeal, we address Alanis's claim as presented in his appellate brief (and we acknowledge that the standard for granting a new trial under Rule 33 is less strenuous than the standard for granting a motion for judgment of acquittal under Rule 29(c)).

/9 18 U.S.C. sec. 922(g) states, in relevant part:

It shall be unlawful for any person--(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; . . . to ship or transport ininterstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

/10 It is not clear whether the government attempted to demonstrate that the pistol and rifle were acquired separately and at different times or places. If they did not make such a showing, the indictment under which Alanis was charged would be duplicitous under our recent holding in United States v. Buchmeier, 255 F.3d 415, 422 (7th Cir. 2001) (holding that, without such a showing, "the

government may only charge [the] defendant with one violation of sec. 922(g)(1) . . . , regardless of the actual quantity offirearms involved"). The defense did not challenge the indictment on this ground, yet even if it had, because the 120-month sentence Alanis received on the weapons counts is to be served concurrently with the 468 months on each of Counts I, IV, and V, any error was harmless. See id. at 426.